UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMBER GROVE HOMEOWNERS ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 12 C 9142 |
| QBE INSURANCE CORPORATION and COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendants' QBE Insurance Corporation's ("QBE") and Community Association Underwriters of America, Inc.'s ("CAU") (together "Defendants") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted.

## BACKGROUND[1]

Plaintiff Amber Grove Homeowners Association ("Association") is an Illinois Common Interest Association of homeowners. The Association is comprised of homeowners residing in the Valleys of Amber Grove ("The Valleys"), which includes

---

[1] The following facts are taken from the complaint, and we are bound to accept them as true for purposes of deciding a motion to dismiss under Rule 12(b)(6).

224 residential townhomes in 43 buildings and is located in Bartlett, Illinois. The Defendants are insurance companies.

At all times pertinent to this lawsuit, Defendants and the Association were bound to a Homeowners Insurance Policy ("Policy")[2] which insured the Association for property damage and loss. In the event that the insured suffers a covered loss, the Policy obligated Defendants to pay the "guaranteed replacement cost," or the full cost to repair or replace the covered property, without deduction for depreciation. The Defendants would first pay an amount up to the "actual cash value" of the damaged property, which is the replacement cost less the depreciation of the property, prior to completion of repair or replacement. The insured would then collect the remaining amount – the value of depreciation of the property – upon completion of the repair.

The Policy also contained a clause limiting an insured's ability to sue Defendants. The provision states:

> D. LEGAL ACTION AGAINST US
>
> No one may bring a legal action against [Defendants] under this Property Coverage Part unless:
>
> 1.   There has been full compliance with all of the terms of this Property Coverage Part; and

---

[2] Defendants attached a copy of the Policy as an exhibit to its motion to dismiss. Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to the claim. *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

> 2. The action is brought within two years after the date on which the direct physical loss or damage occurred

("limitations clause").

Finally, in a section entitled "Insured's Duties in the Event of Loss or Damage," the Policy sets forth conditions that an insured must meet to obtain coverage, including the following provision:

> 12. Send [Defendants] a signed, sworn statement of loss containing the information we request to investigate or settle the claim. You must do this within 60 days.

On April 5, 2010, a hail storm damaged several buildings in the Valleys. The Association notified the Defendants of the damage and that a claim would be forthcoming. Defendants sent representatives to investigate the property damage in August 2010. Some time after November 11, 2010, the Defendants provided the Association with an estimate of the property damage, and a replacement cost of $119,448.69. The Association disputed the estimate amount as insufficient to cover its loss. It also claims that the estimate was deficient for its alleged failure to identify all the damage which occurred and for not identifying the proper methods for repair or replacement. The Association also disputed the Defendants' plan to repair some of the damage where the Association felt that replacement was necessary. This prompted the Association to demand that Defendants perform a more thorough investigation into the property damage. In the meantime, the Association retained its own

3

contractor to investigate the nature and extent of the damage and to provide an estimate of the costs necessary to repair the damage.

On May 12, 2011, representatives from the Defendants and the Association met and inspected the damage. Present were Defendants' adjuster, an engineer and roofer hired by Defendants, the Association's property manager, and two representatives employed by the contractor hired by the Association. At the conclusion of the inspection, all parties involved agreed that in some instances whole roofs or portions of roofs needed to be replaced. Defendants' representatives assured the Association's property manager that a new report documenting the extent of the damage and needed repair would be forthcoming along with revised cost estimates.

While the Association waited for the report, in August 2011, it proceeded with the repair project. It obtained repair quotes and retained an architect and engineering consultant. The Association also obtained a bank loan to pay for the repairs. In October 2011, the Association entered into a written contract with its contractor to perform the repair work. The work on a number of buildings was completed before the onset of winter with the rest to be completed the next spring.

On November 10, 2011, the Association's attorney notified Defendants by letter that the Association was proceeding with the needed repairs to the property and that the cost for the repairs would be $567,204.19. Subsequently, Defendants' attorney sent the Association a revised report estimating the replacement cost of the

4

loss at $135,158.69, with an actual cash value of $89,222.78. According to the Association, the report suffered from the same deficiencies as the Defendants' first estimate for undervaluing the damage and not specifically identifying what damaged property was accounted for in the estimate.

At this time, Defendants requested that the Association sign a "Sworn Statement of Loss" ("Statement of Loss"). The document already listed $135,158.69 and $89,722.78 as the guaranteed full replacement cost and actual cash loss, respectively. Because the Association disputed the amounts listed in the Statement of Loss, the Association refused to sign the document. Defendants sent another copy of the Statement of Loss on February 1, 2012, which the Association again refused to sign. The Association attempted to negotiate a resolution to the dispute by offering to execute a modified sworn statement and partial proof of loss with a qualifying statement that the valuations and claim amount were not final and subject to final determination. Defendants denied the Association's request.

Meanwhile, the repair work was completed in August 2012, and the Association paid the contractors shortly thereafter. On October 3, 2012, the Association's attorney notified the Defendants' attorney of the project's completion and demanded payment of the guaranteed full replacement cost. The Defendants have not paid the Association any amounts as of the filing of this lawsuit.

On October 10, 2012, the Association filed a one-count complaint in the Circuit Court of Cook County, Illinois against Defendants for breach of contract, claiming that Defendants have failed to pay any amount to the Association as it was required under the Policy .[3] Defendants removed the action to this Court under 28 U.S.C. §1441 invoking diversity jurisdiction. Defendants now move to dismiss the complaint under Rule 12(b)(6). They contend that the entire complaint is subject to dismissal because the lawsuit was filed later than permitted under the Policy's limitations clause.

## LEGAL STANDARD

In assessing a Rule 12(b)(6) motion to dismiss, the Court accepts all well pled facts as true and draws all permissible inferences in the plaintiff's favor. *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations; she must only provide enough factual support to raise her right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a claim must be facially plausible, a requirement that is satisfied if the pleadings "allow[] the court to

---

[3] *Amber Grove Homeowners Association v. QBE Insurance Corporation*, 12 L 11553.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(b)(6) motion is appropriate vehicle for seeking dismissal on a limitations defense if the allegations of the complaint taken together with any exhibits show that the complaint was filed beyond the limitations period. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).

## DISCUSSION

QBE contends that the suit is time-barred by the limitations clause because the Association did not file the lawsuit within two years after the property damage occurred. An insurance contract may validly restrict the time in which an insured party may file suit under the policy. *Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 709 F. Supp. 801, 807 (N.D. Ill. 1988) (citing *Florsheim v. Travelers Indemnity Co. of Ill.*, 393 N.E.2d 1223, 1228 (Ill. App. Ct. 1st Dist. 1979)). Failure to file a lawsuit within the time prescribed by an insurance policy's limitations period may bar relief to the insured party. *Hoover v. Country Mut. Ins. Co.*, 975 N.E.2d 638, 646 (Ill. App. Ct. 1st Dist. 2012).

According to the limitations clause found in the Policy, an insured party may only sue the Defendants if "[t]he action is brought within two years after the date on which the direct physical loss or damage occurred." The hail storm and resulting property damage occurred on April 5, 2010. This lawsuit was filed on October 10,

2012: over five months past the two-year limitation period. This would seemingly preclude the instant suit.

The Association contends that the Policy's limitations clause is not a bar to a late-filed lawsuit until the repair work is completed. However, the limitations clause in no way indicates that its applicability is conditioned on the repair work being completed. It unambiguously conditions an insured party's ability to file suit on (1) the insured party's compliance with its obligations under the Policy, and (2) the lawsuit being filed "within two years after the date on which the direct physical loss or damage occurred." Insurance policies are subject to the same rules of interpretation as other contracts. *Univ. of Ill. v. Continental Casualty Co.*, 599 N.E.2d 1338, 1345 (Ill. App. Ct. 4th Dist. 1992). "[I]f the language of the policy is clear and unambiguous, it will be applied as written." *Id.* The Association provides no basis for finding any ambiguity in the Policy's limitations clause.

However Section 143.1 of the Illinois Insurance Code tolls the running of an insurance contract's limitation period "from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part." 215 ILCS 5/143.1. Here, the Policy required the Association to file a "sworn statement of loss containing the information [Defendants] request to investigate or settle the claim." The Association twice refused to sign the pre-filled Statements of Loss because it did not agree and did not wish to swear to amounts of damage that it

8

disagreed with. Fair enough. However, this did not absolve the Association from complying with the Policy, which required that the Association send a "sworn statement of loss." "Section 143.1 requires a proof of loss must be filed in the form *required* by the policy in question before the limitations period provided in the policy will be tolled." *Vala v. Pac. Ins. Co.*, 695 N.E.2d 581, 583 (Ill. App. Ct. 4th Dist. 1998) (emphasis in original). Although the Association did provide Defendants with various pieces of information throughout the claims process, nothing in the complaint suggests that the Association furnished any sworn statements regarding the loss. Accordingly, the Association's communications did not trigger 215 ILCS 5/143.1's tolling provision. *See id.* ("Filing of other information with an insurance company does not start tolling the running of a policy's . . . limitations period if sworn proof of loss is required by the policy.").

This is not to say that the Association was at the Defendants' mercy to either attest to an insufficient Statement of Loss or allow the limitations period to run. The Policy only required the insured party to provide a "sworn statement of loss." Nothing in the Policy required the Association to submit the Statement of Loss that the Defendants sent it. Thus, the Association had at least two options available to it that would have preserved its right to sue. First, it could have sent its own sworn document with its own estimates of the repairs, since the Policy did not impose any further obligations on the insured party to comply with this provision. This should

9

have been especially apparent to the Association, which, according to the complaint, was represented by counsel fairly early in the life of the dispute. Second, once it became clear that Defendants would not agree to the Association's demand for full reimbursement on February 1, 2012, it could simply have sued the Defendants for failure to perform under the Policy. The Association pursued neither course of action. Because it failed to satisfy section 143.1's requirement that it file a proof of loss in accordance with what the Policy required, the Association cannot avail itself of the protection afforded by the statute.

The Association also argues that Defendants waived the right to enforce or are estopped from enforcing the limitation clause. A waiver is an intentional relinquishment of a known right. *Florsheim*, 393 N.E.2d at 1229. An insured party establishes waiver by showing facts suggesting that enforcement of an insurance policy provision would be unjust or unconscionable, such as when an insurer dissuades an insured party from filing suit by implying that it will settle the case, *Lake in the Hills v. Ill. Emcasco Ins. Co.*, 506 N.E.2d 681, 683 (Ill. App. Ct. 2d Dist. 1987), or when the insurer's words or conduct were "inconsistent with its intention to rely on the requirements of the policy," *Florsheim*, 393 N.E.2d at 1228.

Estoppel "implies the prejudicial reliance of the insured" by some act, conduct or inaction of the insurance company. *Florsheim*, 393 N.E.2d at 1229. To establish estoppel, the insured party must establish that (1) it was misled by the insurer's

conduct or statements; (2) the insured's reliance on the insurer's conduct or statements; (3) the reliance was reasonable; and (4) the insured's reliance was to its detriment. *Id.* An insured party need not establish the insurer's intent to mislead. *Id.* Conduct that amounts to estoppel typically involves the insurer's acknowledging liability, advance payments in contemplation of eventual settlement, and statements that encourage the insured to delay filing suit. *Mitchell v. State Farm Fire & Cas. Co.*, 796 N.E.2d 617, 621 (Ill. App. Ct. 4th Dist. 2003). Moreover, an insurer is estopped from enforcing a limitations clause if its actions during negotiations operate to "lull the insured into a false sense of security, thereby causing him to delay the assertion of his rights." *Id.*

Here, the Association alleges that Defendants tendered two separate reports that it believed woefully undervalued the damage from the hail storm. The Association received the second report sometime after it sent its own estimate of $567,204.19 on November 10, 2011. The Association also claims that the Defendants sent the Association two Statements of Loss, each listing the replacement cost at $135,158.69. The second Statement of Loss was sent on February 1, 2012, just over two months before the Policy's two-year limitation period was set to expire. The complaint further alleges that Defendants declined to accept the Association's offer to send a modified Statement of Loss and partial proof of loss. Finally, the complaint alleges

11

that Defendants refused to accede to the Association's October 3, 2012 demand to reimburse it of all costs for the repairs.

The complaint fails to establish that Defendants waived its right to enforce the Policy's limitations clause. The only allegations hinting at Defendants' waiver was its agreement to reassess the property damage after its first inspection and its subsequent report reflecting a revised estimate. The revised estimate was sent sometime between November 10, 2011 and before February 1, 2012. The Association underscored its revised estimate when it sent two Statements of Loss – the second received on February 1, 2012 – which reflected the same amounts as in the revised report. At the latest, the Association received the revised estimate two months before the limitations period expired. Further, the revised estimate and Statements of Loss were sent after the Association had sent its own estimate and demand for reimbursement. In light of Defendants' insistence on settling for $135,158.69, the Association fails to offer any explanation as to how Defendants' conduct dissuaded it from filing suit in the hopes that a settlement was forthcoming. *Lake in the Hills*, 506 N.E.2d at 683. With at least two months between the Association receiving notice that Defendants were not budging from its terms of settlement and the expiration of the limitations period, we find it neither unjust nor unconscionable that the Defendants sought to enforce the limitations clause. *See Salloum Foods & Liquors, Inc. v. Parliament Ins. Co.*, 388 N.E.2d 23, 29 (Ill. App. Ct. 1st Dist. 1979) (Failure to file suit within a limitations

period is not excused "[w]hen the alleged inducement for delay . . . has ceased to operate prior to the expiration of the policy's limitation period, so as to afford the insured a reasonable period of time within which to file suit."). Accordingly, Defendants did not waive their right to enforce the limitations clause.

With respect to estoppel, the Association contends that the lack of an outright denial of a claim, the Defendants' acknowledgment of liability, and Defendants' representations preclude enforcement of the limitations clause. It is true that the complaint lacks any allegation of Defendant denying the Association's claim outright. Defendants in fact acknowledged that they were liable for $135,158.69. However, the Association offers no explanation of how this acknowledgment misled it in any way. Nor can it show that it was swayed by any purported representations from Defendants. To the contrary, it vehemently disputed the amounts and adequacy of Defendants' reports and estimates. Accordingly, we discern no allegations giving rise to the inference that the Association relied on any misrepresentation made by Defendants, or that Defendants misled the Association.

Because the Association filed suit after the time permitted by the limitations clause and no reason in law or equity to excuse the Association's failure to file suit in time, the suit is barred and dismissal is appropriate.

## CONCLUSION

For the foregoing reasons, the complaint is dismissed.

Date:   April 17, 2013   

CHARLES P. KOCORAS
United States District Judge